All rise. Please be seated. The next case called for are the Sher-Jo, Inc. v. Town & Country Center Council. Whenever you're ready, you may proceed. Justice Goldberg, that door is open. Will somebody close that for us? Thank you. Thank you. And our clerk is in here. ... We can't jump on this, sorry. I didn't notice. ... Sorry, I think we need her, Mr. Flynn. No problem. He's our gatekeeper. We don't ask you to keep your own time. ... Okay? Okay. Thank you. Your faith, please, the court. Your honor, my name is Dean Bruce Flynn, and I represent the defendant, or appellant in this matter, Town and Country Centers, Incorporated. Now, there are two issues before you this morning. The first is whether a commercial lease was properly extended by the plaintiff to the defendant, and the second is whether an amendment to that lease, modified in place notice provisions contained in that original master lease agreement. Now, taking that first issue first, the issue is whether or not a letter drafted by a third party and forwarded to the plaintiff, which was then sent to the defendant, qualifies as a satisfactory notice under the lease agreement. Now, presuming... Doesn't that depend on number two? Yes, it does. Maybe you ought to flip them. Absolutely. Well, looking at this from my... In looking at the second issue, the trial court found that the amendment to the lease modified and replaced the notice provisions of the master lease. Now, in looking at the actual amendment to the lease, each and every paragraph begins with very restrictive language as to how this amendment is going to affect the master lease. The first paragraph starts out with, notwithstanding anything contained in the lease, the term of the lease is modified as follows. Essentially what happened is the master lease had about five options to extend, and those had run out, so they executed an amendment to add an additional option to extend the lease. So the first paragraph covered this additional term. The second paragraph of that amendment, again, beginning with restrictive language, went over what the rent was going to be. The third paragraph went over an updated address for the owner for notice purposes. And then the fourth and final paragraph was a restrictive paragraph in and of itself, again, stating except as expressly stated herein, the master lease controls. So I think in looking at the basic plain language of the amendment and the fact that each paragraph has restrictive, exclusive language, it's clear that this did not modify and replace the notice requirements in the original lease. In looking at the amendment, there's no language on how to extend this new term, how to put notices, require things of that nature. And the reason that is is because the original lease contained it. There's nothing in this amendment affecting that. So in relation to that second issue, I do not believe that any notice was satisfactory, which is what the trial court found. What did you say? Any notice was satisfactory? The trial court found two things. First, that the letter was sufficient notice. But then he goes on and states that because of the amendment, any notice would have been satisfactory. Even oral notice would have been satisfactory because of the amendment. And so that's the second issue which I respectfully disagree with. Now, I never saw where the court found any kind of ambiguity in this case. Don't you have to find some ambiguity before you allow all this parole evidence in this contract? I think you're correct, Your Honor. The only ambiguity there was was some brief ambiguity over it. There was a disagreement as to what was said during the telephone conferences. But that's parole evidence. Yes, so I don't believe there was any other ambiguity. There's no other. I mean, I was concerned only because the court indicated also that somehow equity might apply in this case. Either you have a contract or you don't have a contract. And during our oral arguments before the court, which we do not have a transcript of, there were arguments about whether equitable considerations apply, and I believe the appellee may argue a bit about that too. But I think the case law is clear that while equity may apply in certain circumstances, the Supreme Court in Deichmann held that as long as time is of the essence of the contract, that meaning if it's in the contract, the court is bound by the terms of that contract. In this case, it's crystal clear that time is of the essence of the contract.  So as far as any equitable considerations, I don't think that apply here. I agree with you on a contract. A contract is a contract. Okay. I wanted to eliminate that, at least hear your argument on it. Thank you. Go ahead. So just wrapping up that second issue, which really needs to be answered first, I believe the restrictive language of that amendment clearly doesn't modify and replace the entire notice requirements of the original lease. Again, I think it's clear that the terms had just run, so they added another one, they updated the rent schedule, and then they even updated the address for notice purposes specifically. So notice was still required, written notice was still required. So now going back to that first issue is whether the notice that was provided, whether that was sufficient, again, we would say that it wasn't. And I understand that the court is well aware of the facts in this case. But there's a sublease agreement that kind of plays a part. Now, that sublease agreement was inter-solving between Sherjo, the plaintiff, and Fazoli's Restaurants, which is a third party in this matter. Town and Country Center is not a party to that sublease. Of course, they were a party to the master lease. That notice was written by a representative of Fazoli's directly to Sherjo, their sublease lessor. It referenced Fazoli's desire to exercise their option to extend the sublease agreement, and it requested that Sherjo provide confirmation that they had also exercised that option to extend the master lease. There's no language in there indicating that Sherjo is, in fact, going to exercise that option. There's no language in there that they've already done so. There's nothing in there about the master lease. So it's undisputed that the only writing that was ever sent from Sherjo to Town and Country was a fax of this letter from Fazoli. So in reviewing the case law that applies to these, Illinois law is clear, since the Dyckman case, that strict compliance with commercial lease agreements no one adheres to. In this case, the master lease required irrevocable notice to be given if you, as the tenant, decided to extend the commercial lease, and that that notice must be given in writing. Now that strict compliance has also been upheld by the 5th District in both LaSalle and Frickville, and I've cited both of those. But those kind of go over very similar issues. In LaSalle, we dealt with a tenant who was trying to extend his lease within a shopping mall center, which is very similar to what we have here. In that case, he called the tenant, or excuse me, called the landlord, orally informed him, or the landlord, that he was going to extend the lease, but didn't submit a written notice as required by the lease until after the deadline. There, the court held that oral notice didn't matter. He had to strictly comply with the lease. In that case, he didn't strictly comply with the lease. He only orally notified. He didn't notify in writing until a few weeks after. So he didn't properly renew the lease. In Frickville, it's a little bit different. It's not necessarily a property, but it would have to do with the lease of a mangrove, which is a piece of equipment for manufacturing fiberglass tanks. That one was a little bit different, wherein there wasn't a specific time frame he had to provide notice, but once $30,000 became due on their agreement, he had to provide notice of renewal within 10 days of that. Now, in that case, there's no dispute that he didn't provide notice, but what he did do is he submitted payment for the use of the mangrove with a new rate for the renewal. And the court found that even though he submitted the payment with the new rate under the alleged renewal, it still wasn't sufficient because he didn't provide notice. So all of these cases kind of illustrate and state over and over again that strict compliance with the lease is required. In this case, the lease simply required a written notice from ShareJob to Town & Country, and that just didn't happen. It didn't happen until two weeks after the deadline when the lease was. The amendment, however, refers to the section of the lease that talks about extension,  So why is it that the opening language, notwithstanding anything else to the contrary, doesn't refer to the other paragraphs? You see what I'm saying is you have an amendment to this particular section, which is on payment terms and notice on when to extend as opposed to addresses. And so why is it that the language doesn't apply to, say, paragraphs 1 through 25, but the amendment does apply to the entire section that you're referencing? So you're referencing the extension paragraphs. Why is it that we can't read it that way?  Each paragraph, I think it's pretty clear what specifically it applies to. And I understand that there's a whole paragraph. I believe it's 56 dealt with the extensions of terms. And I think A through E is the new options. F is how to exercise irrevocable notice. Which is the issue here? Yes. So A through E, so we had 56A through F. Yes. And what was being amended evidently was that section. Yes. But in the amendment, does it say only paragraphs A through E are being amended? It doesn't do that, does it? No. So why is it that that preliminary language doesn't refer then to paragraphs 1 through 55 and any paragraphs thereafter? In other words, you have an amendment to this section. Yes. And I think the reason that is is because that's the specific section that dealt with the options to extend. But that also is the one that says notice in F. Well, it says irrevocable notice. And then there's a totally separate section that deals with all notices that have to be in writing. Oh, so that's your position? There's a totally, in addition to that, there's another, I believe it's section 42, that all notices have to be in writing. And the only thing in the amendment that ever talks about that is updating the address. But your client acknowledges that there was this receipt, and then there's some confusion or, not confusion, but back and forth about who said what. Yes. Is it your position that under the strict construction of the lease that that doesn't matter? All of that language really is just superfluous because the writing is clear? That's correct, Your Honor. And I think LaSalle tells us that also. LaSalle, there was an oral notice before the time frame, and then the written notice came later. And the court said it doesn't matter. The written notice is what we have to look at. Overall, I think the main issue is whether a letter from a third party to another party about a separate lease constitutes a proper notice in this case. And I don't think it does. Again, I think the case law supports our position. And as far as what was said, I agree, Your Honor, that I don't think that because the writing is required, any superfluous phone calls don't necessarily matter because of what we have in LaSalle. And we know that oral notice isn't sufficient. So I believe I've discussed all the issues I had at this time. Do your honors have any other questions? I don't believe so. Thank you, Counsel. Thank you, Counsel. May it please the Court. Good morning, Your Honors. Adam Lohler, of Lohler Brown Law Firm, here today on behalf of the Appellee's Shared Domain. I will start out by going over some of the items I agree with Mr. Flynn's argument. Strict compliance has been the law in Illinois since at least 1900, and it continues to this day. I would like to jump right into the match release and the amendment. Some differences begin to flesh out there. The match release, paragraph 56, A, B, C, D, and E all deal with options. A 10-year option followed by 5-year options. F specifically deals with the exercise of those options. 56F says exactly that. Further, the lower portion of paragraph 56 talks about payment terms. The amendment to the lease got rid of all of those option periods. It turned this lease into a 20-year lease with one 5-year option. The reason that is important is that removes the irrevocable notice that must be given by a tenant. There is not a question under the amendment to the lease that notice still has to be given. Further, something that is very important in this case, is nowhere in the match release, which still survives, subject to the amendment to the lease, is there any detail, is there any direction, is there any instruction on what is required in that notice? Written notice is absolutely required. 42 provided for that in the match release, the amendment only changed the notice address. To get back to the amendment, there is no detail on what Judge Palmer found. As you are aware of the procedural history, there have been motions for some adjustments followed by those parties. Judge Palmer, in his word, outlined that as amended, the only requirement was timely written notice in some form, which took county country on notice of plaintiff's intent to exercise said option. Looking at strict compliance... But where did he get that from? What language of the lease did he find that in? Amendment paragraph one, because amendment paragraph one indicates that within 180 days prior to the expiration, the exercise of the option can be given. There's nothing about notice in that. I don't even see the word notice in that paragraph. In the amendment to paragraph one, providing such option is exercised not less than 180 days prior... Exercised. Yes. Providing it's exercised. Yes. In the other lease, you had to exercise your options. And then paragraph F had how to exercise that option. That is correct. Specifically. And so that's why I was asking the question is paragraph one doesn't relate to any of the how to exercise. It relates to, as you say, it eliminates all these other option paragraphs. So I'm wondering where the judge got any notices okay. I believe, and my argument would be that with amendment paragraph one, 56 is out. Everything in 56 was specific to those old options that are no longer on the table. There is still a written notice requirement under the lease. The amendment now says within 180 days prior to the expiration, written notice. There's no dispute in regards to the time frame of the letter that we assert was the notice that was provided. The 180 day period, I believe Mr. Flynn and I agree, was July 4th of 2013. The Fizzoli's letter, sorry, on the strict compliance items that have to be addressed, has to be timely within 180 days. The document was submitted in that form. It had to be in writing. We did that. Nowhere else is there any specific requirements as to what has to be done. I would argue that it has to be sufficient to put Town and Country on notice as to what is happening. There is a sub-lease agreement in this case with Fizzoli's. Churchill was really a middle man. They had this last lease with Town and Country. They then had sub-leased this property out to Fizzoli's. Under the Fizzoli's lease, not to get into those items too much, but there was a 10-year term and three 5-year options. Fizzoli's, upon the exercise of their last and final 5-year option, sent that May 31st, 2013 letter to Churchill. Sherlock Holmes, yes, he is the principal. When I first got the intake of the office, I said, I thought it was one of my high school friends, I said I'm not calling him back. Here it is, it's Sherlock Holmes. So, Sherlock Holmes acknowledged and signed as president. He proceeded to fax that to Doug Gross, the principal for Town and Country. He followed up with a phone call. Where in that phone call did Mr. Gross indicate a facsimile was okay in that he was in receipt of the notice? Nowhere, so in looking at that notice from the reader, you see that Fizzoli's is going to stay at that location for 5 or 8 years. Churchill agrees to that as the middle landlord. Acknowledges that and sends it out to its landlord. Now was there a notation by Churchill on that letter? Other than the acknowledgement of signing and accepting, Fizzoli's exercised their option and being sent a local print shop VFX, no there was not, Your Honor. But, so why should Town and Country accept a commitment from a third party which it has no obligation with? I mean, there's no contractual relationship, no ability to enforce. Why should they accept the letter from some third party to Sherjo as proper notice for extension of a lease that's strictly between Sherjo and Town and Country? Why should they do that? One, because this notice was sent by Town and Country's tenant, Sherjo. Sherjo was the one that sent that document out to Town and Country. And two, because no where in the lease agreement does it provide for any of the specifics. What other understanding did Town and Country have whenever they get that document and see, okay, our tenant, sub-tenant has exercised. This tenant has then contractually obligated himself to that exercise by acknowledging it and sending it out to his landlord. Well, really all it says is we've got a commitment from our sub-tenant. And did Town and Country have to sign off on that lease? There was no. A sublease. Initially there was a match lease agreement. I believe there's information about approval of sub-tenancy. And Town and Country was well aware of that. Obviously. Yeah. As you look at the amendment that was exercised in, or that was, I'm sorry, executed in 1994, that references the Fazoli sub-lease agreement. So we would submit that this written notice that was. Let me ask you a question. Yes. Sorry to interrupt. That's okay. But there's a claim that the defendant informed plaintiff that the May 31 correspondence was not sufficient notice under the lease. If that's true, that you were notified on June 4th, there was still time to make the formal notice requirement under the original lease. There was a month. And that is where, in the record, there was a potential misunderstanding on behalf of Mr. Holmes. He, in fact, that same notice a second time. But if somebody says that that's insufficient, why fax it a second time? Why not just, in the next 30 days, go back to your original lease agreement and do exactly what's said under the notice requirement? Absolutely. Looking back on this with 2020, absolutely. Handwriting something at the top removes us from having to make the argument that we're here on today. But I still believe when we look at that document that was sent, what other interpretation could we have from the notice other than that Sherjo was exercising its option? It had accepted its subtenance, and it had the conversation with Mr. Gross saying, because the lease is exercising, we're going to exercise. That's fine. That's great. That is acknowledging both of the depositions of the principles. What? That they both agreed? That they both agreed that the conversation was had wherein he told them about Fusoli's exercising and Sherjo's intent to exercise. So is it your position? Let me make sure I understand this. Yes, sir. Is it your position that you get this notice from the sub lessee to the sub lessor, Sherjo? Sherjo, in writing on that notice, acknowledges it and sends it to their lessor. Yes. And is it your position by so acknowledging it in writing on their sub lessee's document and sending it to their lessor, they are accepting that and saying, under the terms of the master lease, we are giving you notice and we accept all rights and responsibilities under the master lease? That is correct, Your Honor. That is our opinion, because nowhere in the master lease are any other things specific as to what has to be included. Stepping back and looking at this from a practical matter. And it was within the reasonable time contemplated by the master lease. Correct. The master lease, along with the commitment to provide that, that final option had to be exercised by July 4th. This letter was faxed on about June 4th or 5th, about a month prior, a month prior to the end of that. So that is absolutely our argument, that that satisfies the strict compliance of these documents, which is required. I mean, the fact that this was decided on summary judgment. That's correct. But, you know, the fact that the court took evidence or argued the facts, I mean, as to what was said, I mean, were depositions, I guess, submitted into the record and everything like that? Yes, Your Honor. Okay. So it seems that there was, are you saying there was no question as to the facts of the case? That is correct, Your Honor. There was cross-motion for summary judgment that were appended. One of those parties acknowledges there is a dispute as to that potential second thumbnail. The Judge Palmer said that even with that potential item outstanding, based upon the unambiguous language of the master lease and the contract, he decided as a matter of law, there was no question that this option was properly exercised. And he makes mention of that in the bottom page, the first page of his order. If you like, I can touch briefly on the – on how that might relate to the equitable argument that has been addressed. Throughout all of the cases that Mr. Flynn has cited in his brief, from LaSalle to Goldman to Deutman, they all provide for strict compliance. There's always a reference to – there's still the potential for equitable relief to be provided. It is not to be provided to excuse a late notice. What it can be provided is when you look at the facts. In one of the cases where there are facts where equity was properly referenced in the Goldman case, Mr. Giuliani was a landlord in that case. There was a certified letter that was sent prior to the notice timeframe. There was not appropriate postage on that. It was returned, and that notice was not given until after the expiration date of the exercise of that option. The court in that case said, hey, that's the opportunity for equitable relief to be given. That was an accident. And we would say in this case, while there's strict compliance, there's a possibility for equity because if there was a misunderstanding as to Mr. Gross' statement to Mr. Holmes of that's fine, after acknowledging receipt of that written notice, Mr. Holmes had understood that to mean that that is fine. We are good to go for another five years. Just keep in mind this is a relationship of 20 years. Mr. Holmes, that I can say shared in town and country and their predecessor, had a 20-year contractual relationship. He reasonably relied upon that statement. The LaSalle case can be differentiated because in LaSalle, the court said no equity. It doesn't matter what the tenant believed because in that case, the tenant had called and only given verbal notice. There was no discussion about any written notice. So the tenant, through his own neglect or negligence in that case, did not have any right to assert any equitable claim. But I guess to boil it down, those are the items. What is your equitable claim? That the four days late was, I mean, you did actually submit the formal written notice on July 18th. That was that. And so really, you're four days late. If we find that there was no amendment to this lease and that your client didn't properly notify the landlord by July 14th, you did by July 18th. So you're four days late, basically. I think we're 14 days late. Fourteen days? Yeah. Oh, that's right, July 4th. So 14 days late. Yeah. Our equitable argument would be that this notice is not capable of misunderstanding. If Sherjo did not write at the top, Sherjo exercises it, you step back and you read this document that Mr. Gross acknowledged he received not once but twice, it's clear what the party is going to continue to do there. And if the misunderstanding from that spine is I need something else, that's where we'd ask that the equitable relief be given. This was not a last minute 1159 that night. This was a month in advance of a tenant who was exercising properly his option in accordance with the match release as amended. What about the statement that they make or the claim that they make that your client was told that he had to exercise it properly and had a month to do that? But didn't do it. Correct. And that is the dispute that exists between Mr. Gross and Mr. Holmes. That's to the extent that I say. If your honors don't have any further questions, that concludes my argument. Thank you, counsel. Thank you. Counsel? Thank you. Just briefly, I wanted to touch on a few things that counsel brought up first in relation to the actual was always letter. Mr. Holmes didn't acknowledge it, but the letter requests that he acknowledged the receipt of the notice. There's nothing indicating that by signing it, he's accepting it or using it as his own. It's just merely acknowledging that he received it. Forwarding this to their vessel. I guess it could. But as far as, you know, Mr. Waller brought up, you know, there's no requirement for the notice needs to contain. I think it needs to contain something about exercising this option to renew this lease. I mean, if you look at this letter, there's absolutely nothing about this lease other than a request that Sherjo notified, as always, whether it's been done or not. That's it. I understand what that says, but I'm saying upon receipt of that and acknowledgement of that, the fact that Sherjo then forwarded it to their lessor, doesn't that constitute what the amended lease requires? That we've actually got a live tenant. We're intending to renew and you're fully informed of the circumstances because we're forwarding you the exact letter and we're renewing. I think it would be helpful if it said that. I mean, I guess I would disagree. It doesn't say anything. Oh, it would be very helpful if they said that. I'm talking about the court basically, you know, in the exercise of its position of construing the evidence and determining whether there's been any genuine issue of material fact. So construed, apparently, as a basis for its award of summary judgment. How is, in follow-up to Justice Goldmanhurst's question, how does town and country bind the lessor under the terms of that letter? How does town and country bind Sherjo under the terms of that letter? Right. If they want to enforce. That's what I was just going to bring up. Say the situation were reversed and town and country was trying to say, you did accept the lease, and Sherjo was saying, no, we didn't. There's nothing. We could not go to court with anybody to stand on saying, you called and told me you were going to do it. You sent me this letter. This letter says it has nothing in writing for us to say, see, you exercised it. No, no, you didn't. It just says that Fazolius was intending to do that with you. There's nothing that Sherjo had sent us in writing indicating they were going to exercise their option to renew the lease. So I believe that's what your question was, Your Honor. If the rules were reversed, with this written notice, alleged written notice, there's nothing town and country could do to enforce that. And just touching back on some issues we already talked about, the main dispute is, you know, what that's fine meant. It's our position that that's fine meant, you know, we all accept facts. And even in the plaintiff appellee's brief on page 9, they relate that as well. But that's fine was in relation to sending a fax. There was never any agreement as far as our position that this fax letter was sufficient. So, Your Honor, based on the foregoing, we're asking that this court remand it back to the circuit court with directions to grant the defendant's motion for summary judgment. Do Your Honors have any more questions for me this morning? I don't believe so. Thank you, Counsel. Thank you. We appreciate the briefs and arguments. Counsel will take the case under advisement.